**TERMICOLD CORPORATION**

v.

**The UNITED STATES.**

**No. 383–80T.**

United States Claims Court.

May 6, 1983.

John H. Doran, Portland, Or., for plaintiff; Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., of counsel.

Kenneth R. Boiarsky, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L.

Archer, Washington, D.C., for defendant; Theodore D. Peyser, Jr., Washington, D.C., of counsel.

## OPINION

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

In this suit to recover federal income taxes paid for the taxable years 1973 through 1976, defendant moves for summary judgment that plaintiff, Termicold Corporation (Termicold), is not entitled to deductions it claims for expenditures incurred in connection with an employee recreational facility. For the reasons discussed below, defendant's motion is granted.

### I

On September 1, 1973, Termicold purchased a 36-foot twin diesel engine boat for $59,541 and a dingy for $626.[1] From the date of purchase through the balance of Termicold's taxable year ending December 31, 1973, the boat was held in Portland, Oregon awaiting transfer to its permanent moorage at Flounder Bay, near Anacortes, Washington.

In 1974 Termicold had approximately 337 employees. On June 19, 1974, Mr. J.C. Heinz, then a Termicold Vice-President,[2] wrote a memorandum to 26 of them to the following effect:

> The boating season is here and we are anxious to have each of you enjoy it by participating in the use of our company boat.
>
> The vessel is named "SUSAN". She will sleep six persons comfortably and is moored in Anacortes, Washington in the heart of the beautiful San Juan Islands where the scenery, fishing and relaxing are at their best.

> Your company acquired this boat for the purpose of making it available to you for your use. So that the vessel can be of utmost benefit to all of you, she will be scheduled through Adele Nelson in the General Office. If you desire to use the boat this summer or fall, please contact Adele for scheduling.

> \*  \*  \*  \*  \*  \*

> We hope you will use the boat and know you will enjoy it.
>
> Best Regards,
> [Joe]
> Joseph L. Heinz

These 26 employees consisted of five officers of the company plus 21 others characterized by a vice president of the company in a deposition as consisting of "executives and middle management."

Specifically excluded from this privilege were 281 other Termicold employees[3] covered by collective bargaining agreements and its employees in non-union plants who held positions comparable to positions covered by collective bargaining agreements in the union plants. In addition, 30 other employees,[4] representing Termicold's office staff, were not precluded from using the boat, but were not entitled to schedule its use either, so that for all practical purposes, they could only enjoy it as invitees of members of the first group. In the three year period 1974–76, on only one occasion did a member of the office staff use the boat, and this was as an invitee.

Termicold incurred the following expenses in connection with the boat[5] and claimed their amounts as deductions in the respective taxable years:

| | |
|---|---|
| 1973 | $ 7,553 |
| 1974 | $13,697 |

---

1. The facts set forth herein are based on the factual allegations made by Termicold in its petition and in its pretrial submissions, documents supplied by plaintiff, and depositions of plaintiff's officials.

2. Heinz became President of Termicold on April 19, 1976.

3. In 1974, 317 in 1975 and 356 in 1976.

4. In 1974, 31 in 1975 and 34 in 1976.

5. The expenses were for moorage, electricity, parts, maintenance and repairs, fuel and oil, licenses and other fees to regulatory agencies, insurance, depreciation, and "miscellaneous."

| | |
|---|---|
| 1975 | $13,475 |
| 1976 | $14,484 |

Upon audit, pursuant to the authority of I.R.C. § 274,[6] the Internal Revenue Service disallowed the deductions on the grounds that they were expenditures for an entertainment facility which: (1) were not directly related to the active conduct of Termicold's business; and (2) were not for the recreational benefit of Termicold's employees generally.

## II

The pertinent section of the Internal Revenue Code provides as follows:

SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(a) *Entertainment, Amusement, or Recreation.—*

(1) *In general.—*No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) *Activity.—*With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to * * * the active conduct of the taxpayer's trade or business, or

(B) *Facility.—*With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business * * *.

* * * * * *

(e) *Specific Exceptions to Application of Subsection (a).—*Subsection (a) shall not apply to—

* * * * * *

(5) *Recreational, etc., expenses for employees.—*Expenses for recreational, social, or similar activities (including facilities therefor) primarily for the benefit of employees (other than employees who are officers, shareholders or other owners, or highly compensated employees). * * *

Plaintiff concedes that to qualify under I.R.C. § 274(e)(5),[7] an expenditure primarily for the benefit of employees may not discriminate in favor of officers, shareholders or highly compensated employees; but plaintiff contends that the section imposes no other restriction on the number or proportion of the employees benefitted—i.e., it may be for only as few as two employees. Defendant maintains that the expenditure must be for the benefit of employees generally.

While the statutory language does not in itself resolve the interpretative dispute, it is concluded that the legislative purpose as reflected in the committee reports and the now longstanding Treasury regulations support defendant.

I.R.C. § 274 was enacted in 1962 in order to eliminate "widespread abuses" in the area of entertainment and related expenses. H.R.Rep. No. 1447, 87th Cong., 2d Sess. 19 (1962), 1962–3 C.B. 405, 423; S.Rep. No. 1881, 87th Cong., 2d Sess. 24–25 (1962), U.S. Code Cong. & Admin.News 1962, p. 3304, 1962–3 C.B. 707, 730–31. Specifically, Congress was concerned that "entertainment and related expenses, even though having an association with the needs of business, confer substantial tax-free[8] personal benefits on the recipients * * * and that in many instances deductions are obtained by disguising personal expenses as business expenses." H.R.Rep. No. 1447, *supra,* at 19, 1962–3 C.B. at 423. See *also* S.Rep. No. 1881, *supra,* at 24–25, U.S.Code Cong. &

6. Unless otherwise noted, all references herein to sections of the Internal Revenue Code (I.R.C.) and Treasury Regulations on Income Tax (26 C.F.R.) are to the provisions as in effect during the 1973 through 1976 taxable years.

7. Termicold *does not* contend that the expenses satisfy the deductibility requirements of I.R.C.

§ 274(a) but rests its claim solely on the ground that the expenses come under the exception contained in I.R.C. § 274(e)(5).

8. For expenses not subject to the general disallowance provision because treated as taxable compensation to the recipient, *see* I.R.C. § 274(e)(3).

Admin.News 1962, p. 3327, 1962–3 C.B. at 731. Thus, deductions for some of these expenses were partially or completely disallowed by I.R.C. § 274(a).

Both the House Committee on Ways and Means and the Senate Committee on Finance used the following language in explaining the provision at issue:

> (e) Expenses incurred for recreational, social, or similar activities (including facilities) primarily for the benefit of employees. The employees referred to in this case are those, other than officers, shareholders, or highly compensated employees. In this case an individual would be considered a shareholder only if he (taking into account holdings of members of his family) holds an interest in the corporation of 10 percent or more. *This category is intended to pertain to the usual employee fringe benefit programs, such as expenses of operating a company swimming pool or baseball diamond, as well as the expenses of the annual company picnic or Christmas office party.* [Emphasis added.]

H.R.Rep. No. 1447, *supra,* at 25, 1962–3 C.B. at 429; S.Rep. No. 1881, *supra,* at 37, U.S. Code Cong. & Admin.News 1962, p. 3340, 1962–3 C.B. at 743. Thus, the committees in both Houses contemplated that the exception to the general disallowance provision was "intended to pertain to the usual employee fringe benefit programs." In this regard, the reports cite as examples programs which share a common characteristic: they typically are available to an employer's employees in general.

Consistent with the above are the technical explanations which accompanied the respective committee reports. These explanations both state as follows:

> Paragraph (5) provides an exception for expenses for recreational, social, or similar activities which are primarily for the benefit of the employees of the taxpayer. This exception applies to the usual employee fringe benefit programs. For ex-

ample, the expenses of operating a company bowling alley or swimming pool *which is available to all employees* generally will be deductible. Similarly, the costs of the office Christmas party or summer outing generally will be deductible. [Emphasis added.]

House Technical Explanation accompanying H.R.Rep. No. 1447, *supra,* at A34–35, 1962–3 C.B. 501, 532–33; Senate Technical Explanation accompanying S.Rep. No. 1881, *supra,* at 176, U.S.Code Cong. & Admin. News 1962, p. 3477, 1962–3 C.B. 841, 880. The last two sentences of the above-quoted explanation provide examples of facility expenditures that generally are deductible. The first such sentence refers to facilities (the company bowling alley and swimming pool) which are "available to *all* employees." (Emphasis supplied.) The next succeeding sentence does not contain the limiting language of "all employees" but does mention two activities (the office Christmas party and the summer outing) that typically are available to employees in general. Thus, the technical explanations indicate that an employee recreational facility must be available to all employees in order to qualify under I.R.C. § 274(e)(5), or at least to employees generally.[9]

The applicable Treasury regulations also quite clearly support the defendant's interpretation of the statute. Treas.Reg. § 1.274–2(f)(2) provides:

> (v) *Recreational expenses for employees generally.* Any expenditure by a taxpayer for a recreational, social, or similar activity (or for use of a facility in connection therewith), primarily for the benefit of his employees generally, is not subject to the limitations on allowability of deductions provided for in paragraphs (a) through (e) of this section. This exception applies only to expenditures made primarily for the benefit of employees of the taxpayer other than employees who are officers, shareholders or other owners who own a 10-percent or greater interest

---

**9.** In its brief the defendant states that it does not contend that entertainment activities and facilities must be available to *all* employees in order to qualify under § 274(e)(5) of the Code, but only that it be available to the taxpayer's employees generally.

in the business, or other highly compensated employees. * * * Ordinarily, this exception applies to usual employee benefit programs such as expenses of a taxpayer (a) in holding Christmas parties, annual picnics, or summer outings, for his employees generally, or (b) of maintaining a swimming pool, baseball diamond, bowling alley, or golf course available to his employees generally. Any expenditure for an activity which is made under circumstances which discriminate in favor of employees who are officers, shareholders or other owners, or highly compensated employees shall not be considered made primarily for the benefit of employees generally. On the other hand, an expenditure for an activity will not be considered outside of this exception merely because, due to the large number of employees involved, the activity is intended to benefit only a limited number of such employees at one time, provided the activity does not discriminate in favor of officers, shareholders, other owners, or highly compensated employees.

Not only does the caption refer to "Recreational expenses for employees *generally*" but the regulation also states that to be deductible the taxpayer's recreational expenditure must be "primarily for the benefit of his employees *generally*" and, as examples, the regulation cites a taxpayer's expenses "in holding Christmas parties, annual picnics, or summer outings for his employees *generally*," and expenses "of maintaining a swimming pool, baseball diamond, bowling alley, or golf course available to his employees *generally*." (Emphasis supplied.)

Still further, the regulation explains that an expenditure which discriminates in favor of employees who are officers, shareholders, owners or highly compensated employees is *not* made primarily for the benefit of employees generally. And the clear implication of the last sentence is that while an employer will not be barred from deducting an expenditure for an activity which, due to the large number of employees, is intended to benefit a limited number *at one time,* the expenditure is not deductible if the activity benefits a limited number of his employees absolutely.

Recognizing that the statute applied a broad brush to the great number of factual variations of entertainment, amusement and recreational expenses of businesses, Congress specifically left it to the Secretary of the Treasury and the Commissioner of Internal Revenue to fill in the interstices in the statutory language, by providing in I.R.C. § 274(h) that "[t]he Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section * * *." In cases of this sort, "[t]he role of the judiciary * * * begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967). And *see also American Standard, Inc. v. United States,* 220 Ct.Cl. 411, 416–17, 602 F.2d 256, 260–61 (1979) and *Union Electric Co. v. United States,* 158 Ct.Cl. 479, 486, 305 F.2d 850, 853–54 (1962). In the light of the general purpose of the statute and the legislative committee reports, the interpretation placed on the statute by the Secretary's regulation is certainly a reasonable one and makes it unnecessary to decide whether, if faced with the same question initially and without the aid of the regulation, the court would have decided the same way.

■ Furthermore, this regulation is entitled to weight as a substantially contemporaneous construction of the statute by persons most familiar with the statutory purpose. *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476–77, 488, 99 S.Ct. 1304, 1306–1307, 1312, 59 L.Ed.2d 519 (1979); *United States v. Correll, supra,* 389 U.S. at 307, 88 S.Ct. at 449; *White v. Winchester Club,* 315 U.S. 32, 41, 62 S.Ct. 425, 430, 86 L.Ed. 619 (1941). And given the longstanding existence of the regulation (20 years), we may impute Congressional approval to its provisions. *Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 53, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955). *See also Commissioner v. Portland Cement Co.,*

450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). Significantly, Termicold does not challenge the validity of the regulation.

## III

 The undisputed facts in this case demonstrate without any doubt that Termicold did not qualify for a deduction for the expense of maintaining the boat for any of the years at issue.

1. As previously noted, 26 employees were entitled to schedule the boat for their own use and to invite any of the approximately 30 members of the office staff, if they chose. At the same time, during 1974, plaintiff had 159 full-time and 122 part-time or seasonal employees who were wholly excluded from use of the boat. For 1975 the comparable numbers of excluded employees were 187 and 130, and for 1976, 189 and 167. Thus, it is apparent that the recreational facility was maintained for the benefit of only a small fraction of the employees and not for plaintiff's employees generally.

2. In incurring expenditures to provide and maintain this recreational facility, plaintiff discriminated in favor of its officers. This is apparent from the fact that all five of the officers were included in the group entitled to use the boat and none of the five was in the group excluded from its use.

3. Finally, it is clear from the record that in allocating the use of the boat, plaintiff discriminated in favor of its highly compensated employees. Neither the statute nor the regulations define highly compensated employees, but it is fair to infer from the context that it is a comparative term and that the bar to discrimination in favor of highly compensated employees is designed to accomplish the same objective as that of the bar to discrimination in favor of officers, shareholders and owners. The record reflects that the average compensation paid the 26 members of the privileged group was $21,560 for 1974, $24,373 (25 members) for 1975 and $27,840 (25 members) for 1976; whereas the average full-time compensation of the members of the excluded group was only $12,481 for 1974, $13,227 for 1975 and $14,352 for 1976.

Accordingly, defendant's motion for partial summary judgment is granted.