**RITE AID CORPORATION and Subsidiary Corporations,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–5098.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 6, 2001.

B. John Williams, Jr., Shearman & Sterling, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Richard J. Gagnon, Jr.

Stuart J. Bassin, Attorney, Washington, DC, argued for defendant-appellee. With him on the brief was Jonathan S. Cohen, Attorney.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

MAYER, Chief Judge.

Rite Aid Corp. appeals the judgment of the Court of Federal Claims, *Rite Aid Corp. v. United States*, 46 Fed. Cl. 500 (2000), granting summary judgment for the government that Treasury Regulation (Treas. Reg.) § 1.1502–20 is not arbitrary, capricious or manifestly contrary to law. Because the regulation is not within the authority delegated by Congress under Internal Revenue Code (I.R.C.) § 1502, we reverse.

*Background*

In 1984, Rite Aid acquired eighty percent of Penn Encore (Encore), a small discount bookstore chain, in an asset sale for $3 million. Rite Aid purchased the balance of Encore stock in 1988 for $1.5 million. Including the tax on the 1984 asset sale, the cost basis in the stock was $4,659,730. Beginning in 1984, Rite Aid included Encore in its affiliated group of corporations for the purpose of filing consolidated income tax returns under I.R.C. § 1501. From 1984 through 1994, Encore experienced significant growth in sales but was only marginally profitable, with net income decreasing in the final three years from $1.7 million to a $5.2 million loss. In 1994, Rite Aid sold Encore to an unrelated company, CMI Holding Corp. (CMI). CMI refused to make an I.R.C. § 338(h)(10) election to treat the transaction as a sale of assets for tax purposes.

Rite Aid calculated the amount of its loss on the sale of Encore stock under I.R.C. § 1001, which provides that the loss on the sale of property equals the excess of the adjusted basis over the amount realized. Rite Aid increased its basis to include $44,890,476 of inter-company debt contributed to Encore's capital on the date of sale and reduced its basis by $10,905,806 to reflect Encore's net negative earnings and profits. The adjusted basis in Encore stock on the date of the sale was $38,644,400. Rite Aid had net selling expenses of $16,507,661, resulting in a net loss of $22,136,739 on the sale.

Under I.R.C. § 165, Rite Aid would be permitted to deduct its loss on the sale of Encore stock. However, Treas. Reg. § 1.1502–20 disallows a shareholder's investment loss to the extent of the subsidiary's "duplicated loss factor." The duplicated loss factor is calculated as the excess of the subsidiary's adjusted basis in its assets over the value of its assets immediately after the sale. Encore's duplicated loss factor was $28,535,858. Because this loss exceeded Rite Aid's investment loss of $22,136,739, Treas. Reg. § 1.1502–20 prohibited the otherwise valid deduction for Rite Aid's loss on the sale of Encore stock.

Rite Aid paid the tax and filed a claim for refund, which the government denied. On its own behalf and as the common parent for the affiliated group of corporations that filed a consolidated income tax return, Rite Aid sued for a refund of tax payments under I.R.C. § 7422 and interest due under I.R.C. § 6611, for the tax year ending March 4, 1995. Both parties moved for summary judgment on the sole issue of whether Treas. Reg. § 1.1502–20 was a proper exercise of the Secretary of the Treasury's regulatory authority. The court granted the government's motion and denied Rite Aid's.

## Discussion

■ We have jurisdiction to hear this appeal from a final judgment of the Court of Federal Claims under 28 U.S.C. § 1295(a)(3). We review a grant of summary judgment *de novo*. *See Gump v. United States*, 86 F.3d 1126, 1127 (Fed.Cir. 1996). The delegation of rulemaking power in I.R.C. § 1502 provides for the promulgation of legislative, rather than interpretive regulations. *See Am. Standard, Inc. v. United States*, 220 Ct.Cl. 411, 602 F.2d 256, 260 (1979). Legislative regulations are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Schuler Indus., Inc. v. United States*, 109 F.3d 753, 755 (Fed.Cir.1997) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). A regulation is manifestly contrary to the statute if it is outside the scope of authority delegated under the statute. *See Rowan Cos., Inc. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981).

I.R.C. § 1501 provides that an affiliated group of corporations shall have the privilege of filing a consolidated income tax return. In section 1502, Congress delegated to the Secretary of the Treasury authority to: "prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability." In 1928, Congress debated the reauthorization of the privilege. The House of Representatives initially voted to revoke it, but Section 141 of the Revenue Act of 1928, 45 Stat. 791, preserved it "with certain necessary amendments to eliminate the administrative problems of the present law." S. Rep. No. 960, 70th Cong., 1st Sess. 1 (1928). The Senate Committee on Finance report accompanying the 1928 internal revenue bill noted that "[m]any difficult and complicated problems, however, have arisen in the administration of the provisions permitting the filing of consolidated returns." S. Rep. No. 960, 70th Cong., 1st Sess. 15 (1928). The committee "found it necessary to delegate power to the commissioner to prescribe regulations legislative in character covering them." *Id.* Section 141(b) of the 1928 act is identical to the current section 1502.

■ Section 1502 grants the Secretary "the power to conform the applicable income tax law of the Code to the special, myriad problems resulting from the filing of consolidated income tax returns." *Am. Standard*, 602 F.2d at 261. There may be several reasonable methods to correct problems created from the filing of consolidated returns, and the Secretary's authority in choosing among them is absolute. *See id.* The purpose of section 1502 is to give the Secretary authority to identify and correct instances of tax avoidance created by the filing of consolidated returns. But section 1502 "does not authorize the Secretary to choose a method that imposes a tax on income that would not otherwise be taxed." *Id.* "Income tax liability is not imposed by the Secretary's regulations, but by the Internal Revenue Code." *Id.* Therefore, in the absence of a problem created from the filing of consolidated returns, the Secretary is without authority to change the application of other tax code

provisions to a group of affiliated corporations filing a consolidated return.

Rite Aid argues that the duplicated loss factor of Treas. Reg. § 1.1502–20(c) imposes a tax on income of corporations filing consolidated returns that would not otherwise be taxed. I.R.C. § 165 allows a deduction of losses from the sale of property. Treas. Reg. § 1.1502–20 disallows the deduction. Realization of the loss does not stem from the filing of a consolidated return, and the denial of the deduction imposes a tax on income that would otherwise not be taxed.

The government responds that the duplicated loss factor prohibits a consolidated group of corporations from recognizing a loss on the sale of an affiliate's stock and the purchaser from recognizing the same loss when selling the assets of the purchased subsidiary. Similarly, Treas. Reg. § 1.1502–32 prevents duplicate recognition of the decline in value of a subsidiary's assets when the subsidiary first sells them, and the parent member of the consolidated group later sells the subsidiary's stock for a loss. The duplicate loss rule of Section 1.1502–20 applies when the sequence of transactions is reversed; the parent sells the stock of the subsidiary for a loss and the subsidiary later sells its assets for a loss. According to the government, Treas. Reg. § 1.1502–20 restores symmetry to the tax code and ensures that the income of the consolidated group and its members are clearly reflected.

Furthermore, says the government, filing a consolidated tax return is a privilege, and if the affiliated group elects to take advantage of the benefits of filing a consolidated return, "it must take the bitter with the sweet." *Garvey, Inc. v. United States,* 726 F.2d 1569, 1571 (Fed.Cir. 1984). A taxpayer is free to organize his affairs as he chooses, but once organized, he must accept the tax consequences of his choice, whether contemplated or not. *See*

*Comm'r v. Nat'l Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974).

In our view, there is no requirement that a taxpayer acquiesce in a regulation promulgated outside the authority delegated by Congress. The "bitter with the sweet" does not include the invalid. The loss realized on the sale of a former subsidiary's assets after the consolidated group sells the subsidiary's stock is not a problem resulting from the filing of consolidated income tax returns. The scenario also arises where a corporate shareholder sells the stock of a non-consolidated subsidiary. The corporate shareholder could realize a loss under I.R.C. § 1001, and deduct the loss under I.R.C. § 165. The subsidiary could then deduct any losses from a later sale of assets. The duplicated loss factor, therefore, addresses a situation that arises from the sale of stock regardless of whether corporations file separate or consolidated returns. With I.R.C. §§ 382 and 383, Congress has addressed this situation by limiting the subsidiary's potential future deduction, not the parent's loss on the sale of stock under I.R.C. § 165. Rather than creating symmetry in the tax code, then, the duplicated loss factor distorts rather than reflects the tax liability of consolidated groups and contravenes Congress' otherwise uniform treatment of limiting deductions for the subsidiary's losses. Because the regulation does not reflect the tax liability of the consolidated group, the regulation is manifestly contrary to the statute.

### Conclusion

Accordingly, we reverse the judgment of the Court of Federal Claims.

*REVERSED.*