**UNION CARBIDE CORPORATION**

v.

**The UNITED STATES.**

**No. 180–78.**

United State Court of Claims.

Dec. 12, 1979.

---

4. *See* note 3, *supra*.

Before DAVIS, KUNZIG and BENNETT, Judges.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

The plaintiff, Union Carbide Corporation, sues for a refund of federal income taxes and interest paid for the calendar year 1967.[1] Plaintiff's recovery depends upon the proper method to be used in computing the reduction in the foreign tax credit required by I.R.C. § 1503(b)(1). The case is before the court on plaintiff's motion for partial summary judgment[2] and defendant's cross-motion for summary judgment. We hold for plaintiff.

The basic facts of the case are not in dispute and may be simply stated. Plaintiff is the parent of an affiliated group of corporations which in the year in question filed a consolidated federal income tax return under I.R.C. §§ 1501–1563. Plaintiff elected to have its foreign tax credit subject to the overall limitation under I.R.C. § 904(a)(2), 74 Stat. 1010 (1960) (now I.R.C. § 904(a)).[3] The affiliated group contained two Western Hemisphere trade corporations (WHTCs), both of which in 1967 had gross income in excess of deductions. The group also contained several other corporations which were not WHTCs. Some of these non-WHTCs sustained net operating losses in 1967.

On its 1967 return plaintiff calculated the deduction allowed under I.R.C. § 922 to WHTCs in accordance with Treas.Reg. § 1.1502–25(c) (1966). Plaintiff did not, however, use the method prescribed by the regulation to determine the amount by

Raphael Sherfy, Washington, D. C., for plaintiff. Robert D. Heyde, Washington, D. C., atty. of record. William M. Bellamy, Jr., New York City, John F. Mooney, Stamford, Conn., Fred W. Peel, Jr., Little Rock, Ark., Miller & Chevalier, Washington, D. C., of counsel.

Marc M. Levey, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., Bruce W. Reynolds, Washington, D. C., of counsel.

1. There is also a foreign tax credit carryback to 1967 from 1968 if plaintiff's position is upheld.

2. Since plaintiff's motion for partial summary judgment is granted, a factual issue remains to be resolved. Defendant has questioned the creditability of all of the foreign taxes paid or accrued by plaintiff's affiliated group in 1967.

The dispute involves whether all of the foreign taxes claimed in 1967 were either creditable income taxes under I.R.C. § 901 or "in lieu of" taxes under I.R.C. § 903.

3. Discussed *infra*.

which its foreign tax credit should be reduced under I.R.C. § 1503(b)(1). On audit the Internal Revenue Service (Service) determined a deficiency for 1967 on the basis that the regulation also applies to computations under I.R.C. § 1503(b)(1). On July 6, 1971, plaintiff paid the additional taxes asserted by the Service. On February 26, 1973, the National Office of the Service issued a technical advice memorandum with respect to plaintiff's 1967 return, which stated that the rules of Treas.Reg. § 1.1502–25(c) should not be applied in computing the reduction under I.R.C. § 1503(b)(1) of the foreign taxes paid by plaintiff's WHTC affiliates. Shortly thereafter, on April 23, 1973, plaintiff timely filed a claim for refund. No formal notice of disallowance was ever sent to plaintiff, and after the expiration of more than 6 months plaintiff filed the present suit.

In its motion for partial summary judgment, plaintiff contends that a refund should be made because Treas.Reg. § 1.1502–25(c) is invalid or, alternatively, because the regulation, even if valid, is inapplicable to I.R.C. § 1503(b)(1). Defendant disputes both contentions and further argues that plaintiff may not now question the validity of the regulation since plaintiff complied with the regulation in computing its consolidated section 922 deduction.

In contrast to the simple facts of the case, the Internal Revenue Code provisions and Treasury regulations pertaining to the case are quite complex.

Section 922 provides a WHTC with a special deduction equal to a fraction of its taxable income. In 1967 this fraction was 29.167 percent,[4] making WHTCs taxable at a rate of approximately 34 percent of taxable income prior to the section 922 deduction (ignoring the effect of the surtax exemption). Unlike some types of corporations with special tax status, a WHTC is not excluded from the privilege of filing consolidated returns with other members of its affiliated group.[5] It is therefore necessary to integrate the section 922 deduction into the consolidated return framework. Treas. Reg. § 1.1502–25(a) specifies the formula by which the consolidated section 922 deduction is to be determined. This deduction is computed by multiplying the fraction in section 922(2)[6] by "that portion of the consolidated taxable income attributable to those members of the group which are Western Hemisphere trade corporations." Treas.Reg. § 1.1502–25(c) then specifies the method for determining such portion of consolidated taxable income.[7]

No mention is made in Treas.Reg. § 1.1502–25(c) as to whether it also applies to computations under section 1503(b)(1). That section requires the computation of the federal income tax due with respect to "the portion of the consolidated taxable income attributable to such [WHTC] corporations." The similarity of the language in section 1503(b)(1) and Treas.Reg. § 1.1502–25(c) lends at least surface plausibility to defendant's argument that consolidated taxable income attributable to WHTCs should be computed by the same method under each provision. Before this argument and the validity of the regulation can be evaluated, it is necessary to consider the purpose and operation of section 1503(b)(1).

Section 1503(b)(1) was enacted as part of Pub.L. No. 86–780, 74 Stat. 1010 (1960).[8]

---

4. Section 922(a) provides that the deduction shall be computed as follows:

"(1) First determine the taxable income of such corporation computed without regard to this section.

"(2) Then multiply the amount determined under paragraph (1) by the fraction—

"(A) the numerator of which is 14 percent, and

"(B) the denominator of which is that percentage which equals the sum of the normal tax rate and the surtax rate for the taxable year prescribed in section 11."

5. *See* I.R.C. § 1504(b).

6. Since the adoption of Treas.Reg. § 1.1502–25(c), section 922(2) has been redesignated as section 922(a)(2) by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1052(c)(1), 90 Stat. 1520, 1648 (1976).

7. *See* discussion *infra*.

8. The present section 1503(b) was originally enacted as section 1503(d). It was redesignated as subsection (b) by the Revenue Act of

The primary purpose of this Act was to amend I.R.C. § 904 to permit taxpayers to elect an overall limitation on the foreign tax credit.[9] Some form of limitation on the foreign tax credit is necessary to prevent foreign taxes, which might be payable at a higher rate than the United States income tax, from offsetting United States taxes on domestic income. Immediately prior to the Act, there was only the per country limitation under which the available credit was computed separately based on the income from and taxes paid to each foreign country.[10] The new elective overall limitation permitted taxpayers to treat foreign taxes and foreign source income collectively.[11] Thus, if the election was made, foreign taxes of one country in excess of the applicable United States tax rate could be used as a credit against the United States taxes on foreign source income from another country which imposed taxes at a rate below that in the United States.

In enacting the elective overall limitation, Congress realized that the election could result in a double tax benefit where a consolidated return is filed by an affiliated group containing one or more WHTCs. If a WHTC paid foreign taxes in excess of the effective United States rate on WHTC income (38 percent when section 1503(b)(1) was enacted, 34 percent in the 1967 tax year involved here), the excess foreign taxes could be used as a credit against the United States taxes on the foreign source income of other non-WHTC members of the affiliated group. In order to prevent the lower effective United States tax rate on WHTC income from also providing a for-eign tax credit bonus, section 1503(b)(1) was enacted at the same time as the change in the foreign tax credit limitation.[12] Section 1503(b)(1) provides as follows:

Sec. 1503. *Computation and payment of tax.*

(b) *Special rule for application of foreign tax credit when overall limitation applies.—*

(1) In general.—If the affiliated group includes one or more Western Hemisphere trade corporations (as defined in section 921), and if for the taxable year an election under section 904(b)(1) (relating to election of overall limitation on foreign tax credit) is in effect, then the amount of taxes paid or accrued to foreign countries and possessions of the United States by such Western Hemisphere trade corporations which may be taken into account for purposes of section 901 shall be reduced by the amount (if any) by which—

(A) the amount of such taxes (or, if smaller, the amount of the tax which would be computed under subsection (a), if such corporations were not Western Hemisphere trade corporations, with respect to the portion of the consolidated taxable income attributable to such corporations), exceeds

(B) the amount of the tax computed under subsection (a) with respect to the portion of the consolidated taxable income attributable to such corporations.

Under section 1503(b)(1) the foreign tax credit is reduced by the amount by which

---

1964, Pub.L. No. 88–272, § 234(b)(1), 78 Stat. 19, 113 (1964).

**9.** S.Rep. No. 1393, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Admin.News, pp. 3770, 3770, 1960–2 C.B. 874, 874.

**10.** Congress repealed the per country limitation in the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, to prevent taxpayers from obtaining double benefits through the averaging of losses incurred in a foreign country. S.Rep. No. 94–938, 94th Cong., 2d Sess. 236–38 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 2897, 3439, 3666–68; 1976–3 C.B. (Vol. 3) 274–76.

**11.** As explained by H.Rep. No. 1358, 86th Cong., 2d Sess. (1960), *reprinted in* 1960–2 C.B. 865, 866: "The overall limitation in effect treats the taxpayer's income as being divisible into two parts, domestic and foreign. Thus, under this limitation a foreign tax credit is allowed for any foreign income taxes so long as these taxes do not represent more than the U.S. tax rate applied to the taxpayer's total foreign income."

**12.** *See* S.Rep. No. 1393, *supra* [1960] U.S.Code Cong. & Admin.News, at pp. 3775–76; 1960–2 C.B. at 877–78.

foreign taxes of a WHTC exceed the 34 percent effective United States rate, but only to the extent that such excess is less than the 48 percent generally effective United States tax rate. Thus, the maximum foreign tax credit reduction is equal to 14 percent of consolidated taxable income attributable to WHTCs, the same amount as the total tax savings resulting from WHTC status. Although the savings from the foreign tax credit may exceed 14 percent, there is no double benefit beyond this point.

As indicated above, Treas.Reg. § 1.1502–25(c) specifies the method by which consolidated taxable income attributable to WHTCs is to be determined for purposes of the consolidated section 922 deduction. The regulation provides that consolidated taxable income attributable to WHTCs is obtained by multiplying consolidated taxable income (computed without regard to the section 922 deduction) by the following fraction:

$$\frac{\text{sum of the taxable incomes of all WHTC members}}{\text{sum of the taxable incomes of all members}}$$

The last sentence of Treas.Reg. § 1.1502–25(c) provides that, if a member has an excess of deductions over gross income, then that member's taxable income shall be treated as zero in computing the above fraction. Thus, the regulation requires that net operating losses suffered by any member should be excluded from both the numerator and denominator of the above fraction (hereinafter called the *fractional method without losses*).

Plaintiff urges that the last sentence of the regulation is invalid. In plaintiff's view, the net operating losses of a member should be included in both the numerator and denominator of the above fraction (hereinafter the *fractional method with losses*).[13]

The effect of the *fractional method without losses* used in Treas.Reg. § 1.1502–25(c) is to allocate ·all net operating losses incurred by any member of an affiliated group to all other members in proportion to their taxable incomes and without regard to the member's status as a WHTC or non-WHTC. Thus, aggregate WHTC income can be reduced by a portion of non-WHTC losses in calculating consolidated taxable income attributable to WHTCs. Under the *fractional method with losses* WHTC income can be reduced only by WHTC losses. The *fractional method without losses* favors an affiliated group with proportionately greater WHTC losses. In such a situation the WHTC losses are allocated in part to non-WHTC members, thus increasing both the consolidated taxable income attributable to WHTCs and the amount of the consolidated section 922 deduction. For the same reasons, the *fractional method with losses* favors an affiliated group, such as plaintiff's, with proportionately greater non-WHTC losses.

Under either method, the amount of the foreign tax credit reduction under section 1503(b)(1) will vary depending on the amount of foreign taxes, but some general rules do hold true. For example, the method producing the larger consolidated section 922 deduction will also produce the larger maximum foreign tax credit reduction since section 1503(b)(1) is designed to match the maximum reduction to the tax benefit of the consolidated section 922 deduction. Where foreign taxes are payable at a rate below 48 percent, this situation may be

---

13. A more complete discussion of the various methods by which consolidated taxable income attributable to WHTCs could be calculated is found in *American Standard, Inc. v. United States,* 602 F.2d 256, 259 n. 1, 220 Ct.Cl. ——, —— n. 1 (1979). Besides the two fractional methods discussed above, there are also two aggregate methods. The *aggregate method without losses* uses the sum of the taxable income of all profitable WHTC members (the same as the numerator in the *fractional method without losses*). The *aggregate method with* *losses* is based on the net taxable income of all WHTC members including those with losses (the same as the numerator in the *fractional method with losses*). The *aggregate method with losses* and the *fractional method with losses* produce essentially the same end result since in the *fractional method with losses* consolidated taxable income and the denominator of the fraction are essentially equal amounts, which cancel out each other leaving an amount equal to the numerator.

reversed at some point so that the method producing the larger section 922 deduction may also result in a smaller foreign tax credit reduction. For example, a reduction of the foreign tax credit will occur only if foreign taxes exceed a "floor" of 34 percent of consolidated taxable income attributable to WHTCs. If the *fractional method without losses* applies so that non-WHTC losses are allocated against WHTC income, the smaller amount of WHTC income so calculated will cause a lower "floor." Hence, some reduction of the foreign tax credit will occur on a lesser amount of foreign taxes than under the *fractional method with losses,* but as indicated above, the maximum reduction will be smaller.

## I

In regard to the first issue, we agree with plaintiff's position that the method prescribed in the last sentence of Treas.Reg. § 1.1502–25(c) is invalid and should not be applied in the computation of either the consolidated section 922 deduction or the foreign tax credit reduction under section 1503(b)(1).

This court has previously considered Treas.Reg. § 1.1502–25(c) in *American Standard, Inc. v. United States,* 602 F.2d 256, 220 Ct.Cl. —— (1979). That case involved an affiliated group which had calculated its consolidated taxable income attributable to WHTCs by the *fractional method with losses.* Only the amount of the consolidated section 922 deduction was at issue. Based on two grounds, only one of which concerns us here,[14] we held the regulation to be invalid as it applies to the section 922 deduction.

The regulation was held to be an arbitrary and unreasonable exercise of the power to promulgate regulations governing con-

solidated income tax returns. Although consolidated return regulations are legislative in character, they must be within the scope of the authority vested in the Treasury by the enabling act. 602 F.2d at 261, 220 Ct.Cl. at ——; *see also American Trans-Ocean Nav. Corp. v. Commissioner,* 229 F.2d 97 (2d Cir. 1956); *Commissioner v. General Mach. Corp.,* 95 F.2d 759 (6th Cir. 1938); *Corner Broadway-Maiden Lane, Inc. v. Commissioner,* 76 F.2d 106 (2d Cir. 1935). Though there may be many reasonable methods to determine a group's tax liability and the Secretary's authority is absolute when it represents a choice between such methods, the statute does not authorize the Secretary to choose a method that imposes a tax on income that would not otherwise be taxed. 602 F.2d at 261, 220 Ct.Cl. at ——; *see also Joseph Weidenhoff, Inc. v. Commissioner,* 32 T.C. 1222, 1242 (1959).

The court in *American Standard* compared the consolidated treatment of WHTCs and public utilities under I.R.C. §§ 922 and 247, respectively. Although the taxable income of both WHTCs and public utilities is subject to similar fractional deductions, the regulations prescribe two different methods for calculating the consolidated deductions. The *aggregate method with losses* (or the *fractional method with losses* ) which has the effect of netting the income of the special subgroup was adopted for the purposes of the consolidated section 247 deduction[15] and was the preferred method for the WHTC deduction prior to the adoption of Treas.Reg. § 1.1502–25(c) in 1966.[16] Although Treas.Reg. § 1.1502–25(c) does operate in a neutral fashion and does not adversely affect all taxpayers however situated,[17] the variation in results under the regulation from those under the *aggregate method with losses* was held to be too radical to justify as a mere mechanical or tech-

---

**14.** The second ground for striking down the regulation was that it violated the Administrative Procedure Act requirements of 30 days' notice prior to the adoption of a regulation. 5 U.S.C. § 553(b), (c), and (d) (1976). This ground has not been argued by either party in the present case. Therefore, our decision here is based solely on the first ground of the *American Standard* decision.

**15.** Treas.Reg. § 1.1502–27 (1966).

**16.** *See* Rev.Rul. 58–618, 1958–2 C.B. 430; Rev. Rul. 56–316, 1956–2 C.B. 597. *Contra,* Rev.Rul. 68–529, 1968–2 C.B. 395.

**17.** *See* discussion *supra.*

nical method of adjusting individual returns to the consolidated return format. By allocating losses without regard to their status as WHTC or as non-WHTC in calculating a deduction based solely on the amount of WHTC income, the regulation was found to have changed the conceptual basis upon which Congress permitted the deduction in section 922. 602 F.2d at 262–65, 220 Ct.Cl. at ——.

The court went on to reject an argument by defendant that "the *portion* of the consolidated taxable income attributable to those members of the group which are Western Hemisphere trade corporations," Treas.Reg. § 1.1502–25(c) [emphasis added], cannot be larger than the whole. Since the *fractional method with losses* could in certain circumstances result in an amount of consolidated taxable income attributable to WHTCs which was larger than consolidated taxable income as a whole, it was argued that the *fractional method with losses* was an unreasonable method. This argument was held to overlook the fact that similar results could occur under Treas.Reg. § 1.1502–27 in the calculation of the consolidated section 247 deduction for public utilities. The court found that the actual net taxable income of the subgroup for which the deduction is intended, even if greater than consolidated taxable income as a whole, was the proper basis on which the deduction should be calculated.

The plaintiff and defendant in this case have offered many of the same arguments which were considered in the *American Standard* decision. Our view of the merits of these arguments remains unchanged. The new arguments offered by the parties here primarily spring from the different context of this suit which arises under section 1503(b)(1) rather than section 922.

The purpose of section 1503(b)(1) is to reduce the foreign tax credit by the amount that foreign taxes exceed the effective 34 percent United States rate on WHTC income but only up to a maximum of 14 percent. Treas.Reg. § 1.1502–25(c), if applied to section 1503(b)(1), would frustrate this purpose by reducing the amount of WHTC income by non-WHTC losses below the amount actually subject to foreign taxation.[18] This lowering of the United States tax base artificially increases the excess of foreign taxes over United States taxes thus increasing the reduction of the foreign tax credit.[19]

For example, suppose that a WHTC member of an affiliated group had taxable income of $1,000 and paid foreign taxes of $340 on this amount. Since foreign taxes do not exceed the United States rate on WHTC income, it would seem that there should be no reduction of the foreign tax credit. However, under Treas.Reg. § 1.1502–25(c), losses of a domestic non-WHTC member of the group could be allocated against the income of the WHTC. If, for example, $200 of domestic losses were allocated to the WHTC under the regulation, then its United States tax base would be reduced to $800, the consolidated section 922 deduction would be $233, and the United States tax after the section 922 deduction was taken would be $272. The difference between the United States and foreign tax credit is $68 which would be the amount of the foreign tax credit reduction if Treas.Reg. § 1.1502–25(c) applied to section 1503(b)(1).

The WHTC in the above hypothetical has not received a double benefit from the section 922 deduction and the overall limita-

---

**18.** It would also appear to be incorrect not to allocate the full amount of WHTC losses solely against WHTC income.

**19.** Such an allocation of losses is also inconsistent with the general rules prescribed in Treas. Reg. § 1.861–8 (1977) for determining whether income and deductions should be considered attributable to sources within or without the United States. The basic thrust of the regulations is that deductions which are "definitely

related" to a "class of gross income" are to be allocated to such class of gross income. Treas. Reg. § 1.861–8(b)(1). Each deduction which bears a definite relationship to a class of gross income is allocated to such class even though, for the taxable year, no gross income in such class is received or accrued or the amount of the deduction exceeds the amount of such class of gross income. Treas.Reg. § 1.861–8(d)(1).

tion on the foreign tax credit. The WHTC paid just enough foreign taxes to offset the United States taxes on only its own income. Any "double" benefit arises from a combination of the section 922 deduction and the ability of an affiliated group to offset the income of one member with the losses of another. This is not the type of double benefit which section 1503(b)(1) was intended to prevent.[20]

Section 1503(b)(1) was enacted prior to the adoption of Treas.Reg. § 1.1502–25(c). Therefore, it cannot be argued that the similarity of the language between the two provisions indicates an implicit ratification of the regulation by a subsequent statute. Moreover, as we held in the *American Standard* case, the regulation was a reversal of prior Service position.[21]

It is worth noting the actual language of the Senate report explaining the effect of section 1503(b)(1) if more than one WHTC is involved.[22] In the report the taxable incomes of the two WHTC members of a hypothetical affiliated group are simply added together. No consideration is given to the possibility that losses of non-WHTC members might affect the amount of consolidated taxable income attributable to WHTCs. While not conclusive, the Senate report tends to show that the *fractional method without losses* is incorrect.

Finally, defendant cites the decision in *Mid-Continent Supply Co. v. Commissioner,* 67 T.C. 37 (1976), aff'd, 571 F.2d 1371 (5th Cir. 1978), as precedent for upholding the validity of the regulation. That case is clearly precedent with respect to plaintiff's alternative argument since it was held that the same method used to calculate the consolidated section 922 deduction must be used to calculate the section 1503(b)(1) reduction of the foreign tax credit. However, the taxpayer in that case did not question the validity of Treas.Reg. § 1.1502–25(c) as a rule for measuring the consolidated section 922 deduction. 67 T.C. at 43. The Tax Court was not bound to accept as controlling the parties' failure to raise a question of law or a stipulation as to a question of law. *Estate of Saia v. Commissioner,* 61 T.C. 515, 519–20 (1974). Nevertheless, it would be extraordinarily capricious for the Tax Court to invalidate a Treasury regulation which has a presumption of correctness when no party argues that the regulation is invalid. Our reading of the *Mid-Continent* opinion does not reveal any serious consideration by the Tax Court or the Fifth Circuit as to the validity of the regulation.

---

20. It would seem that a WHTC member of an affiliated group paying foreign taxes at a 34-percent rate should receive no better or worse treatment that a non-WHTC member paying foreign taxes at a 48-percent rate. The foreign taxes paid by each should produce a credit just sufficient to eliminate the United States taxes due on their foreign source income. If there are domestic losses, this equality of treatment will prevail under the *fractional method with losses* but not under the *fractional method without losses.* The difference in treatment under the *fractional method without losses* is caused in two ways. First, because of the effect on the consolidated section 922 deduction, federal income taxes will be increased by 48 percent of 29.167 percent of the amount of domestic losses allocated against WHTC income. Second, the "floor" below which no reduction of the foreign tax credit occurs will be less than 34 percent of separate WHTC income. Thus, in the example, federal income taxes will be increased by the amount of domestic losses allocated to the WHTC multiplied by 34 percent.

21. *See note 16 supra.*

22. S.Rep. No. 1393, *supra* at [1960] U.S.Code Cong. & Admin.News, p. 3776, 1960–2 C.B. 878, states:

"If more than one Western Hemisphere trade corporation is involved, the taxes of this group of corporations are averaged before determining any foreign taxes which may not be taken into account. This can be illustrated by an example of a Western Hemisphere trade corporation having $100 of income on which the foreign taxes are $20, and another Western Hemisphere trade corporation, included in the same consolidated group, also with income of $100 but foreign taxes of $45. In this case the U.S. tax on this $200 of income before credit would be at an effective rate of about 38 percent, or amount to about $76. The combined foreign taxes on this income would be $65 ($20 + $45). All of these taxes could be credited even though in the case of one of the companies the taxes were in excess of a 38-percent tax. This is because the *average* tax on the combined income of the two Western Hemisphere trade corporations is not in excess of a 38-percent effective rate." [Emphasis in text.]

## II

■ Our decision for plaintiff on the merits is not affected by defendant's procedural argument that plaintiff is barred from attacking the validity of Treas.Reg. § 1.1502–25(c). Defendant argues that, by plaintiff's reliance on the regulation in computing its consolidated section 922 deduction, plaintiff has in effect made the same concession as to the correctness of the regulation that the taxpayer made in *Mid-Continent Supply Co. v. Commissioner, supra.* It is also contended that not until the outset of this litigation did plaintiff denounce Treas.Reg. § 1.1502–25(c) regarding the computation of its consolidated section 922 deduction in order to accommodate its argument concerning the validity of that regulation for purposes of section 1503(b)(1).

Defendant has failed to cite any authorities in support of its contentions, and the precise grounds upon which defendant relies are not clear. Plaintiff could be denied recovery if its claim for refund failed to state the grounds upon which it now proceeds, or plaintiff could be barred from changing the tax treatment of certain items under the doctrine of quasi estoppel, sometimes called the duty of consistency. We conclude that plaintiff is not barred from attacking the validity of Treas.Reg. § 1.1502–25(c) for either reason.

■ Under Treas.Reg. § 301.6402–2(b)(1) (1977), a taxpayer is required to state in his claim for refund the facts and law upon which he relies. The taxpayer will be denied a refund in a later court action if his claim for refund failed to specify the grounds for the claim, *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 51 S.Ct.

376, 75 L.Ed. 1025 (1931), or if plaintiff changes the grounds upon which he relies, *Real Estate Title Co. v. United States,* 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940). We are unable to determine whether plaintiff's claim for refund presented sufficient notice to the Service since defendant has failed to submit a copy of the claim. In the absence of this critical document, it would be improper to hold in favor of defendant based only on allegations as to what the claim states.[23]

■ The purpose of the doctrine of quasi estoppel is to prevent a taxpayer, after taking a position in one year to his advantage and after correction for that year is barred, from shifting to a contrary position touching on the same facts or transaction. J. Mertens, The Law of Federal Income Taxation § 60.04 (1976 rev.). A key element is the fact that the earlier position was then to the advantage of the taxpayer but that it is now to the taxpayer's advantage to shift his position. The doctrine is not intended to prevent a taxpayer from changing a position which is consistently to his disadvantage in any year. *See Georgia Properties Co. v. Henslee,* 138 F.Supp. 587 (M.D.Tenn.1955).

In plaintiff's situation in 1967, where net operating losses were only incurred by non-WHTCs, adherence to Treas.Reg. § 1.1502–25(c) would normally produce a smaller consolidated section 922 deduction. Defendant has admitted that it was not aware whether plaintiff had reduced its taxes for 1967 by computing its consolidated section 922 deduction in accordance with Treas.Reg. § 1.1502–25(c).[24] In view of the uncertainty as to the effect of the regulation on the

---

**23.** In addition, it is reasonable to assume that, if plaintiff failed to raise the invalidity of the regulation in its claim for refund, it was influenced to take this course by the technical advice memorandum issued by the Service on February 26, 1973. That memorandum concluded that the regulation was valid but inapplicable to section 1503(b)(1). Since the Government has changed its position (presumably because of the *Mid-Continent* decision in 1976), it would be manifestly unfair not to allow plaintiff to expand the grounds on which it claims for refund.

**24.** Defendant has raised no contention that compliance with Treas.Reg. § 1.1502–25(c) gave plaintiff more advantageous treatment under section 922 or 1503(b)(1) in years other than 1967. Therefore, we cannot decide whether quasi estoppel should have been applied in regard to 1967 taxes because of pre-1967 tax benefits, and these other years appear to be closed now by the statute of limitations.

total tax due from plaintiff, plaintiff has indicated its willingness to accept a setoff in the amount of any 1967 tax savings resulting from its compliance with the regulation in calculating the consolidated section 922 deduction.

Accordingly, we conclude that plaintiff is not estopped from maintaining that the regulation is invalid. Upon remand defendant should be allowed an opportunity to amend its answer to assert a setoff defense if it determines that a tax savings did result.

### III

Plaintiff has argued in the alternative that even if Treas.Reg. § 1.1502–25(c) is held to be valid, the regulation should not be applied to determine "the portion of the consolidated taxable income attributable to such [WHTC] corporations" under section 1503(b)(1). We need not reach plaintiff's alternative argument since we hold the regulation to be invalid and plaintiff not to be barred from asserting its invalidity. However, a word of clarification is necessary.

In its alternative argument, plaintiff contends that consolidated taxable income attributable to WHTCs under section 1503(b)(1) should be calculated by both the fractional method with and without losses. Section 1503(b)(1)(B) requires the calculation of the federal income tax on consolidated WHTC income after reduction by the section 922 deduction in order to determine the tax benefit under section 922.[25] Assuming Treas.Reg. § 1.1502–25(c) to be valid for purposes of section 922, plaintiff argues that under section 1503(b)(1)(B) pre-deduction WHTC income should be determined by the *fractional method with losses,* but in computing post-deduction WHTC income, plaintiff subtracts a section 922 deduction calculated in accordance with Treas.Reg.

§ 1.1502–25(c) which uses the *fractional method without losses.* In some circumstances this mixed approach advocated by plaintiff will produce a smaller reduction of the foreign tax credit than the consistent use of either fractional method.

Plaintiff has consistently contended that pre-deduction WHTC income should be determined by the *fractional method with losses.* In view of our decision in the *American Standard* case striking down the use of the *fractional method without losses* in Treas.Reg. § 1.1502–25(c) and approving the plaintiff's use of the *fractional method with losses* to determine the section 922 deduction, we agree with this contention of plaintiff. Furthermore, plaintiff's primary contention in this case has been that Treas. Reg. § 1.1502–25(c) is invalid for the purposes of both sections 922 and 1503(b)(1). Therefore, for the sake of consistency, plaintiff should use the *fractional method with losses* to calculate the amount of its section 922 deduction for the purpose of computing the reduction of the foreign tax credit under section 1503(b)(1). We are in agreement with the decision of the Tax Court in *Mid-Continent Supply Co. v. Commissioner, supra,* that to "disregard the relationship that the consolidated section 922 deduction bears to the section 1503(b)(1) limitation * * * would rob section 1503(b)(1) of its vitality and purpose." 67 T.C. at 46. Although we cannot now change plaintiff's section 922 deduction as taken on the 1967 return,[26] it is more important that calculations under section 1503(b)(1) be made on a consistent basis than that the actual section 922 deduction be used in calculating the reduction of the foreign tax credit.

### CONCLUSION

Accordingly, we hold to be invalid the last sentence of Treas.Reg. § 1.1502–25(c)

---

**25.** Although section 1503(b)(1)(A) also requires the calculation of consolidated taxable income attributable to WHTCs, this calculation is made as "if such corporations were not Western Hemisphere trade corporations." Since only pre-deduction WHTC income need be calculated, no problem arises with respect to the use of two different methods.

**26.** At least we cannot now increase the amount of the deduction to lower plaintiff's taxes. As discussed above in part II of this opinion, if the use of Treas.Reg. § 1.1502–25(c) in calculating the consolidated section 922 deduction resulted in a tax savings to plaintiff, defendant may assert a setoff in the amount of such tax savings.

which excludes corporations with net operating losses from both the numerator and denominator of the fraction on computing consolidated taxable income attributable to WHTCs. Plaintiff's motion for partial summary judgment is granted, and defendant's cross-motion for summary judgment is denied. The case is remanded to the trial division for further proceedings in accordance with this opinion.

DAVIS, Judge, concurring in the result:

Under the practice of this court, I am bound by the decision of the majority in *American Standard, Inc. v. United States,* 602 F.2d 256, 220 Ct.Cl. ——, (1979), especially since the court has chosen not to rehear that case *en banc* (order of October 12, 1979). One of the holdings of the *American Standard* decision was that the method prescribed in the last sentence of Treas.Reg. § 1.1502–25(c) is substantively invalid, and today the court proceeds on that basis. On that view, I need not consider whether (a) despite *Mid-Continent Supply Co. v. Commissioner,* 67 T.C. 37 (1976), *aff'd,* 571 F.2d 1371 (5th Cir. 1978), the regulation, even if valid for section 922 purposes, is applicable to the foreign tax credit reduction under section 1503(b)(1) of the Internal Revenue Code, or (b) in view of the alternative procedural holding of *American Standard, Inc.,* Treas.Reg. § 1.1502–25(c) can be held invalid on that procedural ground in this case though the procedural point is not raised by the present taxpayer. And since I agree that there is no estoppel against plaintiff, *American Standard* compels the result reached by the court here.