## EASTMAN KODAK COMPANY

v.

## The UNITED STATES.

### No. 509–81T.

United States Claims Court.

Feb. 9, 1983.

Eric R. Fox, Washington, D.C., for plaintiff. Karl R. Price and Ivins, Phillips & Barker, Washington, D.C., of counsel.

Bruce W. Reynolds, Washington, D.C., with whom was Asst. Atty. Gen., Glenn R. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser, Dept. of Justice, Washington, D.C., of counsel.

## MEMORANDUM OF DECISION

HARKINS, Judge.

In this case, before the court on cross-motions for summary judgment, plaintiff, Eastman Kodak Company, seeks to recover federal income taxes for its taxable year 1970, and interest as required by law. The cross-motions for summary judgment are limited to the liability issue only; the amount of refund, if any, is to be determined after further proceedings. After oral argument on November 23, 1982, it was ruled that plaintiff's motion for summary judgment would be allowed in a memorandum of decision to be filed subsequently.

The basic facts are not in dispute. Plaintiff is engaged in the manufacture and sale of photographic equipment and supplies and various chemical products. Plaintiff is the parent of an affiliated group which in the relevant period included a number of corporations that qualified as Western Hemisphere Tax Corporations (WHTCs), as defined in Internal Revenue Code (IRC) § 921.[1] For 1968, 1969, and 1970, plaintiff and its domestic subsidiaries filed consolidated income tax returns, elected to claim foreign tax credits under IRC § 901, and elected the overall foreign tax credit limitation of IRC § 904(a)(2). Because the group included WHTCs, plaintiff's consolidated return for 1968, by application of IRC § 1503(b)(1), reflected a reduction of $148,068 in the amount of taxes paid or accrued to foreign countries taken into account for purposes of section 901. Plaintiff applied the excess 1968 WHTC foreign tax payments against WHTC income tax liability for 1966, 1967, and 1969, and carried forward to 1970 from 1968 unused WHTC for-

---

1. Unless otherwise stated, all references are to the Internal Revenue Code of 1954, as amended, codified in title 26, United States Code.

eign tax payments in the amount of $30,-360. These payments, treated as credits, were applied against the income tax liability of its consolidated WHTCs for 1970, subject to the requirements of IRC § 1503(b)(1). On the authority of Rev.Rul. 74–72, 1974–1 Cum.Bull. 253, which holds that the foreign taxes disallowed because of the limitation of IRC § 1503(b)(1) do not qualify for the foreign tax credit carryback and carryover provisions of IRC § 904(d), plaintiff's $30,360 carryover to 1970 was disallowed.

At issue is whether reductions of foreign income tax payments, required by application of IRC § 1503(b)(1), made by plaintiff's WHTCs for 1968, are eligible for inclusion in the foreign tax credit mechanism encompassed in IRC §§ 901 and 904, so that $30,-360 may be carried forward for use as a foreign tax credit in 1970. Defendant denies that the amount of foreign tax payments reduced through application of IRC § 1503(b)(1) become tax credits at all, or that such amounts are eligible for treatment as a carryover under IRC § 904(d). Such amounts, defendant claims, are "carved out" and eliminated for tax credit computation. They are to be disregarded in the foreign tax credit mechanism.

No provision of the Internal Revenue Code or the regulations expressly provides that the amounts reduced by application of IRC § 1503(b)(1) may be treated as tax credits and carried forward for use in another year. Nor does any provision expressly prohibit such effect. This issue previously has been litigated in the 5th Circuit, and the Government's position there was rejected.[2] In the instant case, defendant asserts that the decisions in the *Texas Instruments* cases were wrong. Two arguments, which were not presented in either the district court or the court of appeals, are advanced. In a departure from its as-sertion at the trial level in *Texas Instruments,* defendant here contends that IRC § 1503(b)(1) does not establish a foreign tax credit limitation. Instead, the amount reduced by application of IRC § 1503(b)(1) is seen as eliminated entirely from the statutory scheme, and disregarded in all other tax credit computations. Defendant supports its position by reference to a portion of the legislative history in the report of the Senate Finance Committee[3] not cited in the *Texas Instruments* cases, that includes a tabular example of the way in which the section 1503(b)(1) "carve out" would work.

Defendant's position rests upon an analysis of the tax credit mechanism in IRC §§ 901, 902, 904(a) and (d), and 960. The foreign tax credit to be subtracted from tax liability to the United States is provided by IRC § 33, which allows a credit against United States taxes by the amount of taxes paid to a foreign country, "to the intent provided in section 901." Accordingly, IRC § 901, and attendant sections 902 through 906, and 1503(b), provide the amount to be credited. It is basic to the system that a taxpayer cannot take a credit in an amount larger than that portion of its United States tax applicable to the income on which the foreign tax was paid.

IRC § 901 provides that a taxpayer may elect, "subject to the applicable limitation of Section 904," to take a credit for the amount of any income taxes "paid or accrued during the taxable year to any foreign country." In 1968 and 1970, there were two section 904 options: under IRC § 904(a)(1), the credit maximum was calculated on the basis of a per country limitation; under section 904(a)(2), the maximum amount available was calculated on the basis of an overall limitation.[4] In the per country limitation the maximum amount was computed separately for each country. In the overall limitation, the amount was computed on a world-wide basis.

2. *Texas Instruments, Inc. v. United States,* 407 F.Supp. 1326 (N.D.Tex.1976), *aff'd,* 551 F.2d 599 (5th Cir.1977).

3. S.Rep. No. 1393, 86th Cong., 2d Sess., 14–15 (1960), 1960 U.S.Code Cong. & Admin.News 1960, p. 3770; 1960–2 Cum.Bull. 874, 884.

4. The per country limitation has been repealed for taxable years after Dec. 31, 1975. Pub.L. No. 94–455, § 103(a), 90 Stat. 1620 (1976).

The overall limitation in IRC § 904(a)(2) was applicable in this case. It establishes a limit on "the total amount of the credit in respect of taxes paid or accrued to all foreign countries." IRC § 904(d) permits any amount by which any tax "paid or accrued" to a foreign country exceeds the subsection (a) limitation, to "be deemed tax paid or accrued to such foreign country," and eligible to be carried back or carried over. IRC § 904(e)(1) provides, when the overall limitation applies, taxes in the first sentence of subsection (d) shall be "aggregated on an overall basis" rather than taken into account on a per country basis.

During the years in issue, because WHTCs had a tax rate reduction of 14 percentage points, special computations were required to segregate the foreign tax credit computation of WHTCs within a consolidated group. Essentially, IRC § 1503(b) required a special computation of the amount of foreign taxes attributable to the consolidated WHTC deduction, so that the group would be precluded from using the WHTC tax rate differential during the taxable year to reduce the taxes of non-WHTC members of the group.[5] For taxable years after December 31, 1979, the WHTC provisions, including IRC § 1503(b), were repealed by the Tax Reform Act of 1976.[6]

Section 1503(b) provided, if the consolidated return included WHTCs and the overall limitation was elected, the amount of taxes "paid or accrued" to foreign countries by the WHTCs which "may be taken into account for purposes of section 901 shall be reduced by the amount" the effective foreign tax rate on WHTC income exceeded the effective United States WHTC rate (34 percent in 1968) but did not exceed the regular United States corporate rate (48 percent in 1968).[7]

Defendant in this case construes IRC § 1503(b)(1) as a denial that the amount of the reduction was "paid or accrued" under section 901. The section is not seen as a limitation on the foreign tax credit comparable to the treatment provided by section 904(d). Defendant would have the amount disallowed (reduced) seen as a "carve out," or an exclusion, that is eliminated or disregarded for purposes of the Code's tax credit mechanism.

Plaintiff argues that IRC § 1503(b)(1) provided that, when a taxpayer elected the overall limitation and filed a consolidated return, an additional limitation was added to IRC § 904(a)(2). Any excess IRC § 1503(b)(1) amounts in any year were credits which exceeded the section 904 limitation and were eligible for carryover under section 904(d).

Defendant extracts too much from the word "reduce" in that part of IRC § 1503(b)(1) that restricts the foreign tax payments that may be taken into account "for purposes of Section 901." To "reduce" the amount of foreign taxes paid in a taxable year for purposes of a computation designed to prevent a double tax benefit does not require the conclusion that the taxes were not "paid or accrued." The purpose of

---

5. *Union Carbide Corp. v. United States,* 222 Ct.Cl. 75, 81–83, 612 F.2d 558, 560–62 (1979); *Texas Instruments, Inc. v. United States, supra* note 2, 551 F.2d at 606.

6. Pub.L. No. 94–455, §§ 1052(b), 1052(c)(5), 90 Stat. 1648 (1976).

7. IRC § 1503(b)(1) provided:

"(b) Special Rule for Application of Foreign Tax Credit When Overall Limitation Applies.—

(1) In General.—If the affiliated group includes one or more Western Hemisphere trade corporations (as defined in section 921), and if for the taxable year an election under section 904(b)(1) (relating to election of overall limitation on foreign tax credit) is in effect, then the amount of taxes paid or accrued to foreign countries and possession of the United States by such Western Hemisphere trade corporations which may be taken into account for purposes of section 901 shall be reduced by the amount (if any) by which—

(A) the amount of such taxes (or, if smaller, the amount of the tax which would be computed under subsection (a), if such corporations were not Western Hemisphere trade corporations, with respect to the portion of the consolidated taxable income attributable to such corporations), exceeds

(B) the amount of the tax computed under subsection (a) with respect to the portion of the consolidated taxable income attributable to such corporations."

IRC § 1503(b)(1) was to prevent foreign taxes corresponding to the 14 point WHTC tax reduction from being used as credits to offset United States taxes paid by non-WHTCs. In *Texas Instruments,* the 5th Circuit concluded Congress never intended that a reduction under section 1503(b) would produce a total loss of the reduced credits.

Defendant's position is rooted on the absence of a specific statutory provision that unequivocally would permit the carryover of the amount the foreign taxes were reduced. Defendant's interpretation that has the reduced amount of foreign taxes eliminated from IRC §§ 901 and 904(a) and (d), however, is strained, and does not accord with the general foreign tax credit scheme. If a WHTC filed a separate income tax return in 1968, and paid foreign taxes in excess of the 34 percent United States rate to which it was subject, the excess would not have been allowed as a credit in 1968, but would be eligible to be carried to other years under IRC § 904(d). Defendant's interpretation denies to WHTCs included in affiliated groups that elect the IRC § 904(a)(2) overall limitation the opportunity to average out over the IRC § 904(d) carryover period their foreign tax rates. In *Texas Instruments,* the court observed that acceptance of defendant's position would undermine statutory intent and cause a result which treats a WHTC filing a consolidated return differently than if a separate return were filed. Acceptance of defendant's position would result in a complete loss of foreign tax credits in the only situation in which foreign tax credits are limited or reduced in a taxable year without the benefit of the carryover provisions in section 904(d).[8]

Defendant relies upon the legislative history to support its interpretation. The Senate Finance Committee's report included a computation to illustrate the foreign tax credit of an affiliated group of corporations that makes a consolidated return, chooses the foreign tax credit under section 901, and elects the limitation under section 904(a)(2). In a detailed analysis, defendant emphasizes that the committee report's computation does not show, in the amount taken into account under section 901, the $14 reduction produced by application of section 1503(b)(1). As a result, defendant claims, the $14 amount of WHTC foreign taxes, was intended to be "carved out," and eliminated from the foreign tax credit system. Defendant asserts that the erroneous decision in *Texas Instruments,* in part, was invited by the Government's failure to bring to either the district or the court of appeals' attention this example from the legislative history.

The legislative history, as represented in the Senate Finance Committee's report, is relied upon by both plaintiff and the courts in the *Texas Instruments* cases, for support for the carryover of the IRC § 1503(b)(1) reduction. The language of the Committee's report which is cited comes in an explanation of the purpose of IRC § 1503(b).[9] It specifically refers to the amount reduced pursuant to section 1503(b) and states that such amounts could be carried over. The quoted portion includes:

"To prevent this result, the amendments made by your committee provide the foreign taxes which cannot be credited against U.S. taxes in the case of Western Hemisphere trade corporations as a result of the special 14-point-tax differential provided for these corporations may not be used to offset U.S. tax *on other foreign-source income either in the current year or in the years to which the unused credits may be carried.* This is applied only where a consolidated return is filed and only where the overall limitation is used." [10]

8.  *Texas Instruments, Inc. v. United States, supra* note 2, 551 F.2d at 607.

9.  Section 1503(b) originally was enacted as section 1503(d). Pub.L. No. 88–272 (Revenue Act of 1964), § 234(b)(1), 78 Stat. 113 (1964) redesignated it as section (b).

10.  *Texas Instruments, Inc. v. United States, supra* note 2, 551 F.2d at 607, citing S.Rep. No. 1393, 86th Cong., 2d Sess. pp. 3770, 3775 (1960), 1960–2 Cum.Bull. 874, at 878. Emphasis by court.

Legislative history relative to nuances in the Internal Revenue Code, as reflected in reports by the various committees involved, frequently is inconclusive. It is not unusual that different parts of the same report may support opposing interpretations. For this reason, legislative history, as reflected in committee reports and floor debates, is a slender reed that should be approached warily.[11]

The example that defendant selects from the legislative history to demonstrate error in the *Texas Instruments* cases is not conclusive. Nor does it necessarily conflict with the part of the Committee report relied upon by plaintiff and cited in *Texas Instruments*. As plaintiff contends, the example is silent as to the question of carrying over excess WHTC credits. This is because the foreign tax credit rules for WHTC taxes reduced pursuant to IRC § 1503(b) are separate from the provisions of IRC § 904 of general applicability. The example cited by defendant primarily provides a computation of the general foreign tax credit carryover.

In accordance with the foregoing, the rationale of Rev.Rul. 74–72 is rejected. Plaintiff's motion for summary judgment on the issue of liability is allowed, and defendant's cross-motion for summary judgment is denied. The parties will be permitted a reasonable time to stipulate an amount due plaintiff. Final judgment will be entered, pursuant to further proceedings if necessary, after the amount due has been determined.

**11.** The Court of Claims has had occasion to note that legislative history frequently is suspect. In *Hart v. United States,* 218 Ct.Cl. 212, 227, 585 F.2d 1025, 1033 (1978), the court stated:

"The Court has ordinarily expressed a wary attitude in dealing with legislative history invoked by one seeking to expand the literal scope of an Act. * * * We note that with the swiftly growing use of the staff system by Congress, many congressional documents may be generated that are not really considered fully by each or perhaps by any legislator. Thus, committee reports and the like are perhaps less trustworthy sources of congressional intent than they used to be, and less than the actual wording of the legislation, which one would hope received more thorough consideration prior to enactment. If there is inadvertent error either in the statute, or in the committee report, the offender is more likely to be the latter, surely."